Filed 6/9/26  P. v. Gonzalez CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085535 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD297736) |
| v. | |
| JAIME ERNESTO GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Daniel Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

Jaime Ernesto Gonzalez went on a shooting spree in which he killed one person and wounded three others.  A jury found him guilty of murder, attempted murder, and other crimes, and found true enhancement

allegations concerning discharge of a firearm and use of a deadly weapon. The trial court sentenced Gonzalez to prison for an indeterminate term that included firearm and deadly weapon enhancements attached to the murder conviction. He complains the court abused its discretion by refusing to strike those enhancements. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Gonzalez used a social media application to purchase an unregistered handgun. In messages to the seller, he stated, "Imma do it solo," and "Tryna pull it on some Mexicans." Within hours of obtaining the gun, Gonzalez went on a shooting spree.

Gonzalez's first stop was a residential neighborhood in Spring Valley. Antoine Hamilton was outside the house of his neighbor helping to change the battery in her car. Gonzalez drove by and stopped his car. When Hamilton asked whether he could help Gonzalez find someone, Gonzalez told Hamilton it was none of his business. Gonzalez exited his car, pulled out a gun, and shot at Hamilton. The bullet missed Hamilton and entered his house. His son was inside at the time. Gonzalez drove off.

Gonzalez proceeded to the Encanto trolley station, where he got out of his car and fired several shots at a group of teenage boys. Two sustained gunshot wounds that required hospitalization. Bullets passed through the clothing of a third boy but caused no wounds. The shooting was captured by video surveillance from which police were able to obtain a description of Gonzalez and the make, model, and license plate number of his car.

Gonzalez's final stop was the Paradise Hills neighborhood. Gonzalez drove up to Eddie Fillmore and Raul Valdez, who were socializing outside Fillmore's house, and asked for directions. Gonzalez exited his car and fired two shots into Fillmore's back and one into his arm. As Fillmore ran to his

2

house, he heard several more shots. Gonzalez drove away. A neighbor who heard the gunfire called 911. A police officer went to the scene and found Valdez dead on the ground. His body had seven gunshot wounds and 14 stab wounds. Fillmore went to a hospital where he was treated for gunshot wounds.

Police located Gonzalez and his car near the murder scene and arrested him. They found a folding knife on his person and a fixed-blade knife, an unregistered handgun, and bullets in his car.

A jury found Gonzalez guilty of one count of first-degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a); subsequent section references are to this code); five counts of willful, deliberate, and premeditated attempted murder (§§ 21a, 187, subd. (a)); one count of carrying a loaded firearm in a public place (§ 25850, subd. (a)); and one count of shooting at an inhabited dwelling house (§ 246). The jury found true firearm enhancement allegations attached to the murder and attempted murder convictions (§ 12022.53, subds. (c), (d)) and a deadly weapon use enhancement allegation attached to the murder conviction (§ 12022, subd. (b)(1)).

In his sentencing brief, Gonzalez asked the trial court to exercise its discretion under section 1385 to dismiss the firearm enhancements in furtherance of justice. He cited subdivision (c) but did not cite any specific mitigating circumstance listed there. Gonzalez instead cited several mitigating circumstances listed in the California Rules of Court, including: (1) he had no prior criminal record; (2) a mental disorder was a significant factor in the commission of the crimes; (3) he was under 26 years of age when he committed them; (4) imposition of even one firearm enhancement would add 20 years to his prison term; and (5) there were numerous firearm enhancements in the case. (*Id.*, rule 4.423(b)(1), (2), (4), (6), (10), (11).)

3

Gonzalez asked the court to sentence him to prison for 25 years to life for the murder conviction, to impose concurrent terms on all other convictions, and to impose no additional time for enhancements. His sentencing brief included a section on evidence relevant to his future youth offender parole hearing. (See § 3051; *People v. Franklin* (2016) 63 Cal.4th 261.) Gonzalez attached copies of reports of two experts who evaluated him during the trial after doubts about his competency were raised. One diagnosed him with schizophrenia, and the other diagnosed him with an unspecified psychotic disorder.

In their sentencing brief, the People urged the trial court to impose all enhancements and to sentence Gonzalez to prison for 201 years to life. They argued the court need not consider the mitigating circumstances listed in section 1385, subdivision (c)(2) that weigh in favor of dismissal of enhancements because dismissal would endanger public safety. The People cited this court's decision in *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*) for the point that the trial court had to consider Gonzalez's dangerousness at the time he would be set for release if the firearm enhancements were dismissed. According to the People, Gonzalez's "cold-blooded action in finding, approaching, and shooting at unsuspecting, unarmed victims [was] clear evidence of his ability and likelihood in committing future violence that would result in physical injury and serious danger to others." The People alternatively argued that dismissal or reduction of the firearm enhancements was not warranted because aggravating circumstances outweighed mitigating circumstances. They contended there was no credible evidence a mental illness substantially contributed to the crimes. (§ 1385, subd. (c)(2)(D), (5).) The People also contended the facts that there were multiple firearm enhancements and that

Gonzalez's prison term would exceed 20 years (*id.*, subd. (c)(2)(B), (C)) did not warrant dismissal or reduction given his current and future dangerousness. They attached to their sentencing brief copies of reports of two other experts who evaluated Gonzalez during the trial after doubts about his competency were raised. Both found he had no mental illness.

At the sentencing hearing, the trial court stated it had reviewed the parties' briefs and the probation officer's report. The court heard arguments from counsel, which closely tracked their sentencing briefs, and then heard several victim impact statements. The court stated it "rarely make[s] comments at sentencings" but felt it had to do so in this case. It found Gonzalez's conduct was "shocking" and "should frighten every member of this community." The court noted Gonzalez was "hell bent" on obtaining an untraceable firearm, he "wanted to kill as many people as he possibly could in a two-hour period," and the victims "were total strangers." As to the murder, the court stated Valdez "was gunned down and killed," but "that was not good enough for [Gonzalez]," who "went back to his car to get his knife to stab [Valdez]." The court mentioned the conflicting expert opinions on whether Gonzalez had a mental illness and found no mental illness contributed to the crimes. It acknowledged his age as a mitigating factor that would be considered at a future youth offender parole hearing. The prosecutor cited *Gonzalez, supra*, 103 CalApp.5th 215, and asked the trial court to comment on Gonzalez's dangerousness when he would be eligible for release. The trial court noted there were "no mental health issues" for which Gonzalez could get treatment to reduce his dangerousness. It found "the whole goal of the crime was to kill as many people as possible," and it "ha[d] no basis for knowing that in 25 years that that mentality would be lessened." The court "fe[lt] that he's an extreme danger now, and [it] would be very concerned

5

about his release in 25 years based on what [the court] ha[d] before [it]." The court said it "ha[d] no crystal ball" and, given the lack of a treatable mental illness as a causative factor in the crimes, it "ha[d] severe concerns for the safety of the community going forward."

The court sentenced Gonzalez to prison for 25 years to life on the murder conviction (§ 190, subd. (a)), plus consecutive terms of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)) and one year for the deadly weapon use enhancement (§ 12022, subd. (b)(1)). It imposed a consecutive life term on each attempted murder conviction (§ 664, subd. (a)) but "in the interest of justice" declined to impose the attached firearm enhancements (§ 1385, subd. (c)). It imposed concurrent terms on the convictions of carrying a loaded firearm in a public place (§§ 25850, subd. (c)(6), 1170, subd. (h)(1)) and shooting at an inhabited dwelling house (§ 246) and stayed execution of the latter (§ 654, subd. (a)).

## DISCUSSION

Gonzalez complains the trial court abused its discretion by refusing to dismiss the enhancements attached to his murder conviction. He contends the court applied the wrong legal standard in finding dismissal would endanger public safety. That error, says Gonzalez, caused the court to truncate its analysis and not to consider two mitigating circumstances (multiple enhancements, sentence over 20 years) that justified dismissal. He also contends the error was prejudicial because the court might have dismissed the enhancements had it applied the correct legal standard and considered the mitigating circumstances. Gonzalez requests dismissal of the enhancements.

The People object to our consideration of Gonzalez's claim of sentencing error. They point out that although he generally asked the trial court to

6

strike or dismiss the firearm enhancement on the murder conviction under section 1385, he did not cite the specific statutory mitigating circumstances he invokes on appeal. The People note Gonzalez asked the court to stay, not to strike or dismiss, the enhancement for use of a deadly weapon. They fault him for failing to object to the court's finding that dismissal of the enhancements would endanger public safety or to the standard it applied to make that finding. The People argue these deficiencies resulted in a forfeiture of the claim Gonzalez asserts on appeal.

Gonzalez preserved his claim of sentencing error for appeal. He asked the trial court, in writing and orally, to impose no additional punishment for the firearm and deadly weapon use enhancements attached to the murder conviction. Although he requested the enhancements be "stayed," he also asked the court to "strike" or "dismiss" them. As the legal basis for the request, Gonzalez cited section 1385, which authorizes a court to strike or to dismiss an enhancement, not to stay it. (*Id.*, subds. (a), (b)(1), (c)(1).) He did not reference the subdivisions he cites on appeal—multiple enhancements and enhancements whose application could result in a sentence of more than 20 years (*id.*, subd. (c)(2)(B), (C))—but he did cite the corresponding mitigating circumstances in the California Rules of Court (rule 4.423(b)(10), (11)). That sufficed to put the circumstances before the trial court. (See Civ. Code, § 3528 ["The law respects form less than substance"].) Once Gonzalez presented his request to the court and it refused the request, he did not have to object to the refusal to preserve his claim of error for appeal. (*People v.*

*Partida* (2005) 37 Cal.4th 428, 436; *People v. Thomas* (2021) 63 Cal.App.5th 612, 627.)[1]

We turn now to the merits of Gonzalez's claim. Section 1385 gives a sentencing court discretion to strike or dismiss an enhancement "in the furtherance of justice." (*Id.*, subd. (c); see *People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*).) In exercising its discretion, the court must give "great weight" to the mitigating circumstances listed in the statute "unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) The mitigating circumstances include: "(B) [m]ultiple enhancements are alleged in a single case"; and "(C) [t]he application of an enhancement could result in a sentence of over 20 years." (*Ibid.*) We review a sentencing court's decision not to strike an enhancement under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*); *People v. Flores* (2021) 63 Cal.App.5th 368, 376.) A court abuses its discretion if it uses the wrong legal standard, makes factual findings unsupported by substantial evidence, or applies the law to the facts in an arbitrary or capricious way. (*People v. Knoller* (2007) 41 Cal.4th 139, 156; *People v. Garcia* (2024) 101 Cal.App.5th 848, 856.)

Gonzalez contends the trial court abused its discretion by applying the wrong legal standard to his request that it strike the enhancements attached to his murder conviction. He concedes that "if [a] trial court finds that

---

[1] Our conclusion Gonzalez did not forfeit his claim of sentencing error makes it unnecessary to consider his alternative argument that trial counsel provided ineffective assistance by failing to preserve the claim.

dismissing [an] enhancement would endanger public safety, it need go no further in its analysis." (See *Walker, supra*, 16 Cal.5th at p. 1033 ["in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any [statutory] mitigating factors"].) But, Gonzalez argues, in making that finding in this case, the court improperly focused solely on his current dangerousness when it should have considered whether his release from prison after service of 25 years for the murder conviction would result in physical injury or serious danger to others. As support for this argument, he relies on this court's decision in *Gonzalez, supra*, 103 Cal.App.5th 215. That reliance is misplaced.

In *Gonzalez*, the trial court refused to dismiss a firearm enhancement based on its finding the defendant " '*presently* . . . does represent a danger to society.' " (103 Cal.App.5th at p. 224, italics added.) The court interpreted section 1385 as requiring it to decide whether the defendant " '*currently at the time of sentencing* represent[s] a danger to society.' " (*Id.* at p. 223, italics added.) We held the trial court erred in its "singular focus on whether the defendant *currently* poses a danger." (*Id.* at p. 228.) We explained that deciding whether dismissal of an enhancement would endanger public safety is a " 'forward-looking inquiry.' " (*Id.* at p. 229.) The court must consider not only the defendant's current dangerousness but also his dangerousness when he would be released from prison were the enhancement dismissed and, if the sentence is indeterminate, the "safety valve" of approval by the Board of Parole Hearings that is required for release. (*Id.* at pp. 228–229.)

The trial court in this case did not focus on Gonzalez's dangerousness only at the time of sentencing. The court did state he "is an extreme danger now," which was "an appropriate factor to consider" (*Gonzalez, supra*,

9

103 Cal.App.5th at p. 228) since " 'past behavior is the best predictor of future behavior' " (*In re Ross* (2009) 170 Cal.App.4th 1490, 1507). But the trial court did not stop there. It responded to the prosecutor's request that it consider Gonzalez's dangerousness when he would be eligible for release if the enhancements were dismissed by acknowledging it "ha[d] no crystal ball" with which to foresee the future. The court went on to state that, based on Gonzalez's desire "to kill as many people as possible" and the absence of a mental illness by the treatment of which that "mentality would be lessened," the court "ha[d] severe concerns for the safety of the community *going forward*" and "would be very concerned about his release *in 25 years*." (Italics added.) During the sentencing hearing, the court twice noted Gonzalez, as a youth offender, would become eligible for release on parole during his 25th year of incarceration. (See § 3051, subd. (b)(3).) The record thus shows the trial court conducted the required forward-looking inquiry by considering Gonzalez's dangerousness at the time he would be eligible for release from prison were the enhancements attached to the murder conviction dismissed and the "safety valve that exists due to the review by the Board of Parole Hearings." (*Gonzalez,* at p. 229.)

For the foregoing reasons, we reject Gonzalez's claim the trial court applied the wrong legal standard in refusing to dismiss the firearm and deadly weapon use enhancements attached to his murder conviction. "Given the court's consideration of the circumstances of the crime and . . . determination that a long sentence was necessary for [Gonzalez] to become rehabilitated after committing such a crime, we cannot say that the court's determination that dismissal of the enhancement[s] 'would endanger public safety' (§ 1385(c)(2)) was 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Mendoza, supra*, 88 Cal.App.5th at p. 299.) Our

conclusion the trial court did not erroneously find that dismissal would endanger public safety makes it unnecessary for us to consider Gonzalez's related claim the error was prejudicial.

DISPOSITION

The judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.